IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

GEOFFREY EDELSTEN,

    Plaintiff,

                              CASE NO.:

vs.

RAFAEL MAWARDI, a/k/a/ "Alfie" Mawardi,
individually, ISAAC MAWARDI a/k/a Keith
Mawardi, and NURIELLE, LLC, NURIELLE
BAL HARBOUR CORP., HOUSE OF
NURIELLE MIAMI LLC, HOUSE OF
NURIELLE.COM LLC, HOUSE OF
NURIELLE LLC, CINEMA CLOTHING
USA, LLC, NURI & ELLE STUDIO, INC.,
and SCOOP BAR & GRILL, LLC,

    Defendants.

_____/

## VERIFIED COMPLAINT

Plaintiff, Geoffrey Edelsten ("Edelsten"), files this Complaint and sues the Defendants,

Rafael Mawardi and Isaac Mawardi a/k/a Keith Mawardi (the "Mawardis") and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.  This is a civil action for damages, injunctive relief, and equitable relief.

2.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1331 and Section 22 of the Securities Act, 15 US.C. § 77v, as this case involves, among other

claims, violations of the securities laws of the United States.

3.  This court further has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) as Edelsten is

a citizen of Australia.

4.     This court further has jurisdiction as this case seeks declaratory judgment as to the validity, ownership, and existence of certain trademarks under the Lanham Act (15 USC § 1051 et seq.). This court has further jurisdiction as this complaint seeks a declaratory judgment under Part 49, Federal Aviation Regulations, in relation to the validity of an asserted aircraft lien filed with the Federal Aviation Administration.

5.     Defendants, the Mawardis, are residents of the United States of America and reside in Broward County, Florida.

6.     The matter in controversy exceeds $75,000.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

8.     This suit is timely filed, and all acts and conditions precedent to suit have been made and done, or the performance of such is futile and/or has been waived.

## FACTUAL ALLEGATIONS

9.     Plaintiff is an Australian businessman and investor.

10.    Defendant Rafael Mawardi solicited Plaintiff to invest over $18 million dollars into various ventures and projects.

11.    In return for Plaintiff's investments, Plaintiff was promised a preferred return on his investments, stock and other ownership, and dividends.

12.    After over one year of providing Defendants with capital, Plaintiff became alerted that the individual Defendants were attempting to alter the ownership structures of the investment holding companies without notice to, or approval of, Plaintiff.

13.    Plaintiff also determined that the individual Defendants were attempting to divest the investment companies of their principal assets, or mortgage the assets.

2

14.   On June 10, 2012, without notice to Plaintiff, or any other co-owners of the parties'

jointly-owned investments, Defendants fraudulently altered Florida Secretary of State company

records and removed Plaintiff as the Managing Member of various companies without notice or

approval of Plaintiff.

15.   On Monday, September 3, 2012, Plaintiff, accompanied by a team of advisors, flew

from Australia to Florida.

16.   Plaintiff's aim was to investigate these circumstances and to attempt to obtain

accounting and transaction records, corporate documents, and other data and information relating

to Plaintiff's investments with Defendants, as contemplated by the Joint Venture Agreement,

attached hereto as **Exhibit A** (the "JV Agreement"; the joint venture created as a result of this

agreement is hereinafter referred to as the "JV" or "Nurielle Joint Venture").

17.   After several days of meetings, Plaintiff was unable to obtain most of the

information he requested from Defendants.

18.   Moreover, during Plaintiff's review of what little information Defendants were

willing to share, Plaintiff discovered in some cases – and confirmed in others – a pattern of

tortious and criminal behavior, embezzlement, and mismanagement, as detailed below in this

complaint.

19.   When Defendant Rafael Mawardi realized that Plaintiff had become suspicious

about Defendant's use of the investment funds, he reacted with rage, anger, and threats.

20.   This culminated on September 5, 2012, when Defendant Rafael Mawardi threatened

Plaintiff and attempted to extort money from Plaintiff, as detailed below.

21.   On or about September 7, 2012, Defendant Rafael and/or Isaac Mawardi next

looted the entire proceeds of several holding company bank accounts.

22. These accounts contained monies, including those earmarked for employee payroll.

23. Plaintiff brings this lawsuit on his own behalf, and not on behalf of the investment companies at this time.

24. Plaintiff is, was, and/or ought to be managing member of each and every one of the investment companies.

25. Furthermore, Plaintiff has a majority of interest in all the investment companies behind him, by virtue of his support from two other investors.

## COUNT I: EXTORTION

(As to Defendant Rafael "Alfie" Mawardi)

### FLORIDA STATUTES CHAPTER 772 AND FLA. STAT. § 836.05

26. Plaintiff re-alleges paragraphs 1 through 25 above as if fully incorporated herein.

27. On September 5, 2012, and on other recent occasions, Defendant Rafael Mawardi attempted to extort money from Plaintiff.

28. Specifically, Mawardi demanded that Plaintiff pay $1.5 million dollars.

29. If Plaintiff failed to comply, Defendant Rafael Mawardi said that he would carry out an extortionate threat that would cause grievous harm to Plaintiff's standing in the community, and which would harm Plaintiff's professional and familial relationships.

30. This act of extortion by Defendant Rafael Mawardi was witnessed by several prominent businessmen.

31. Plaintiff can therefore satisfy the evidentiary threshold for clear and convincing evidence set forth in Florida Statute § 772.104.

32. This is one of a number of extortionate demands.

4

33. The Defendant's demands are ongoing and continuous.

WHEREFORE, Plaintiff demands damages pursuant to Florida Statute § 772.104, attorneys' fees, and the injunctive relief more fully detailed in this complaint, and any other further relief that this Court deems just and equitable under the circumstances.

## COUNT II: CONVERSION

### EMBEZZLEMENT BY THE INDIVIDUAL DEFENDANTS OF PLAINTIFF'S INVESTMENT FUNDS

34. Plaintiff re-alleges paragraphs 1 through 25 above as if fully incorporated herein.

35. Edelsten entrusted certain accounts and monies to Defendants.

36. Defendants appropriated part of Edelsten's monies for their own personal use, and/or for the use of other companies not jointly owned by the parties.

37. Defendants' use was unauthorized and has permanently deprived Plaintiff of his money.

38. The embezzled funds taken by the individual defendants are substantial, and total many millions of dollars.

WHEREFORE, Plaintiff requests that this honorable court award damages, and reasonable attorney's fees and court costs, and any other further relief that this Court deems just and equitable under the circumstances.

## COUNT III: CONVERSION

### EMBEZZLEMENT BY THE INDIVIDUAL DEFENDANTS OF OPERATING FUNDS

39. Plaintiff re-alleges paragraphs 1 through 25 above as if fully incorporated herein.

5

40. On or about September 7, 2012 Defendants Rafael and/or Isaac Mawardi accessed the bank accounts of several holding companies that own the parties' jointly-owned apartment communities.

41. On or about September 7, 2012 Defendants Rafael and/or Isaac Mawardi withdrew all operating capital from these accounts.

42. Some of these funds appear to have been earmarked towards employee payroll.

43. Defendants converted these funds to their own use and/or to other unapproved and unauthorized uses.

44. The money converted was Plaintiff's by virtue of the fact that Plaintiff, at Defendants request, recently infused operating capital into these accounts.

45. Even if the money is not traceable, Plaintiff is the only preferred creditor in this investment.

46. Defendants had no entitlement to these proceeds.

47. Even if they had valid reimbursement requests, which have never been submitted to Plaintiff's knowledge, such requests are subordinate to payroll obligations, operating expense obligations, and other creditors.

WHEREFORE, Plaintiff requests that this honorable court award damages, reasonable attorney's fees and court costs, and any other further relief that this Court deems just and equitable under the circumstances.

## COUNT IV: FRAUD IN THE INDUCEMENT

### THE INDIVIDUAL DEFENDANT, RAFAEL MAWARDI, FRAUDULENTLY INDUCED PLAINTIFF TO INVEST IN THE NURIELLE COMPANIES

6

48.     Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 25 above, as if fully incorporated herein.

49.     The *prima facia* elements for Fraudulent Inducement include 1. Defendant made a false statement regarding a material fact; 2. Defendant knew or should have known the representation was false; 3. Defendant intended that the representation induce Plaintiff to act on it; and 4. Plaintiff suffered damages in justifiable reliance on the representation; *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808-09 (11th Cir. 2010); *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985).

50.     Defendant Rafael Mawardi and his family members own a family of clothing, apparel, and design companies collectively known as Nurielle.

51.     In June and July of 2011, Rafael Mawardi solicited Plaintiff and asked him to consider an investment in Nurielle.

52.     Specifically, Defendant Rafael Mawardi sought to have Plaintiff purchase half of the shares in the company.

53.     In soliciting and courting Plaintiff, Defendant Rafael Mawardi made numerous statements about Nurielle and the soundness of the investment.

54.     Many of these statements were false statements of material facts; including but not limited to these specific representations:

        a. That the Nurielle companies were making $2 million in profit per year;

        b. That Nurielle was a well-recognized brand and would soon be a household name and valuable brand;

        c. That Nurielle was a safe and proven investment and that profits would increase;

7

d. That an investment in Nurielle would be secured by real property, inventory, and valuable intellectual property such as trademarks.

e. That if Plaintiff made the investment of $3.2 million, Nurielle would be even more profitable within two years, and have annual net profit of many millions of dollars.

55. In support of these claims, Rafael Mawardi provided Plaintiff with financial statements.

56. These financial statements were falsified and/or inaccurate.

57. The trademarks to claimed by the Mawardis to be owned by the joint venture included "Nurielle," "Nuri & Elle Studio," "Cinema Clothing USA," "Alfie's Shoes," "Sachi Kruz," "Drew Cooper," and "Nurielle Fashion."

58. None of these are, however, registered trademarks.

59. Whether registered or not, the Mawardis failed to transfer ownership of any trademarks or other intellectual property to the joint venture.

60. Rafael Mawardi's other verbal assurances that he made were factually false and untrue at the time he made the statements to Plaintiff, and he knew that to be the case.

61. Rafael Mawardi intended to deceive Plaintiff by his false and misrepresented statements.

62. That Plaintiff relied on Defendant's false statements.

63. As a result, Plainntiff was induced to pay $4,262,293.00 to Nurielle in return for 50.00% of the shares of the company.

WHEREFORE, Plaintiff requests that this honorable court either rescind the agreement relating to the Nurielle Joint Venture (discussed below) and return 100% of Plaintiff's

8

investment or, in the alternative, award damages, reasonable attorney's fees and court costs, and

any other further relief, that this Court deems just and equitable under the circumstances.

## COUNT V: FRAUD

### THE INDIVIDUAL DEFENDANTS, RAFAEL AND ISAAC MAWARDI, PERPETRATED A FRAUDULENT SCHEME AGAINST PLAINTIFF AFTER THE NURIELLE TRANSACTION WAS CONSUMMATED

64.     Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1

through 25, paragraph 50, and paragraph 60, above, as if fully incorporated herein.

65.     That the *prima facia* elements for Fraud include: 1. Defendant made a false

statement regarding a material fact; 2. Defendant knew or should have known the representation

was false; 3. Defendant intended that the representation induce Plaintiff to act on it; and 4.

Plaintiff suffered damages in justifiable reliance on the representation; *Mergens v. Dreyfoos*, 166

F.3d 1114, 1117 (11th Cir. 1999); *Grills v. Philip Morris USA, Inc.*, 645 F.Supp.2d 1107, 1122-

23 (M.D. Fla. 2009); *Williams Elec. Co., Inc. v. Honeywell. Inc.*, 772 F. Supp. 1225, 1237 (N.D.

Fla. 1991).

66.     After Plaintiff agreed to invest in Nurielle, Defendants Rafael and Isaac Mawardi

committed other fraudulent acts.

67.     Defendants Isaac and Rafael Mawardi devised a fraudulent scheme to deprive

Plaintiff of any meaningful value in the Nurielle transaction.

### a. **Fraud Relating to the Ownership and Control of Nurielle Assets**

68.     Defendants Isaac and Rafael Mawardi assured Plaintiff that the newly-formed

Nurielle joint venture would own its real estate, a commercial property and factory.

9

69.     The property's address is 4142 N 28th Terrace, Hollywood, Florida (the "Factory").

70.     As part of the transaction, Defendants Isaac and Rafael Mawardi requested that Plaintiff pay off the Factory's mortgage.

71.     Plaintiff paid off the Factory's mortgage in full.

72.     After paying the mortgage, Defendants Isaac and Rafael Mawardi told Plaintiff that title to the property had been transferred to a new holding company, to be nominally controlled by Plaintiff but owned by the joint venture, called GE 4142 N 28 Terrace, LLC, a Florida limited liability company, formed on December 7, 2011.

73.     Defendants Isaac and Rafael Mawardi did not transfer title to the property as they promised to GE 4142 N 28 Terrace, LLC or to the joint venture.

74.     The property is still owned by a different LLC with a similar name: 4142 N 28th Terrace, LLC.

75.     The owner/managers of that LLC are not Plaintiff or the Nurielle Joint venture, but Defendant Rafael Mawardi's wife and daughter, Limor and Nuriel Mawardi.

76.     The Mawardi family has owned this property since 10/16/2003.

77.     Likewise, Defendants Isaac and Rafael Mawardi did not bring Nurielle subsidiary companies into the joint venture as promised.

78.     Instead, Defendants Isaac and Rafael Mawardi and their family members continue to operate them, for profit, outside the joint venture.

79.     One example is Cinema Clothing USA, LLC, a Florida limited liability company, established in 2006.

80.     This company continues to be owned operated outside of the joint venture.

10

81.    It appears to be a run by Daniel Mawardi and Nuriel Mawardi, members of the Mawardi family.

82.    Another example is Nuri & Elle Studio, Inc., a Florida Corporation.

83.    Nuri & Elle Studio, Inc. appears to continue to operate outside the joint venture.

84.    Formed in 2010, this company's currently officers are Elizabeth Mawardi and Nuriel Mawardi. This was changed on March 2, 2011. The prior officers were Rafael Mawardi and Limor Mawardi, according to the company initial articles of incorporation.

85.    On March 31, 2012, Elizabeth and Nuriel Mawradi filed their annual report with the State of Florida for Nuri & Elle Studio, Inc.

86.    The filer averred under oath that they are the managers.

87.    House of Nurielle.Com, LLC is another example.

88.    This LLC appears to be a holding company for Nurielle internet properties.

89.    It was formed on November 8, 2011.

90.    Like the other properties, Defendants Isaac and Rafael Mawardi did not contribute House of Nurielle.Com, LLC and its assets to the joint venture

91.    Defendants Isaac and Rafael Mawardi continue to keep this property outside the venture.

92.    In fact, all Nurielle website properties, including www.Nurielle.com, are owned outside the joint venture.

93.    Nurielle's primary internet property, www.Nurielle.com, is owned by a company called Conquest Group, LLC (www.ConquestGroup.us).

94.    The internet registration record for this website property was last updated on February 10, 2012.

11

95.     Intellectual property assets follow the same pattern.

96.     Despite assurances, Defendants Isaac and Rafael Mawardi failed to contribute these to the Nurielle joint venture as well.

97.     The specific promise made by Defendants Isaac and Rafael Mawardi was that all intellectual property assets would become property of the joint venture.

98.     The trademarks to be owned included "Nurielle," "Nuri & Elle Studio," "Cinema Clothing USA," "Alfie's Shoes," "Sachi Kruz," "Drew Cooper," and "Nurielle Fashion."

99.     Defendants Isaac and Rafael Mawardi have kept these for themselves or their respective family-member owners, and not transferred these to the joint ventures.

### b. Fraud Relating to the Operation of the Nurielle Joint Venture

100.    Defendants Isaac and Rafael Mawardi have committed fraud in the management of the Nurielle joint venture.

101.    On Tuesday afternoon, September 4, 2012, Rafael and Isaac Mawradi met with Plaintiff and his advisors.

102.    The meeting occurred at the office of Attorney Matthew J. Militzok, 3230 Stirling Road, Hollywood, Florida.

103.    Attorney Militzok was present and at the head of the conference table.

104.    During the meeting, Defendant Rafael Mawardi admitted that he kept two sets of books for the Nurielle companies.

105.    He indicated to those present in the room that the purpose of keeping two sets of books was to maximize cash transactions and to minimize reported tax obligations to the Internal Revenue Service.

106.    Defendants Isaac and Rafael Mawardi appear to have siphoned off other Nurielle

money and assets for their personal use, including the purchase of at least one luxury automobile.

WHEREFORE, Plaintiff requests that this honorable court either rescind the agreement

relating to the Nurielle Joint Venture (discussed below) and return 100% of Plaintiff's

investment to the Plaintiff or, in the alternative, award damages, award title to the Factory to

Plaintiff, and award Plaintiff reasonable attorney's fees and court costs, and any other further

relief, that this Court deems just and equitable under the circumstances.

## COUNT VI: FRAUD IN THE INDUCEMENT

### THE INDIVIDUAL DEFENDANT, RAFAEL MAWARDI, FRAUDULENTLY INDUCED PLAINTIFF TO INVEST IN CASINO PLAYA CHIQUITA IN THE DOMINICAN REPUBLIC

107.    Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1

through 25 above, as if fully incorporated herein.

108.    Defendant Rafael Mawardi solicited Plaintiff to enter into another investment, this

one relating to the acquisition of a casino.

109.    The investment was for the purchase of Casino Playa Chiquita (the "Casino") in

the Dominican Republic.

110.    In the Casino transaction, Defendant Mawardi made false statements about the

purchase price of the Casino, the amount actually paid for the property, the condition of the

property, the use of initial funds paid by Plaintiff, the amount of renovation work to be done on

the property, the ownership structure of the holding companies, and the ownership of contiguous

beach properties that were to be acquired exclusively for Plaintiff and his related interests.

111.    As to each, these statements were false statements of material facts

13

112. These statements included but are not limited to these specific representations:

    a. Defendant Rafael Mawardi inflated and then deceived plaintiff about the true purchase price of the Casino. It appears that the Casino was purchased for less than $1 million. Defendant Rafael Mawardi represented that the purchase price was higher. He requested from Plaintiff and obtained a payment of $1.2 million.

    b. Defendant Rafael Mawardi indicated to Plaintiff the condition of the property was excellent, and that little work would be required. This was false. The property needed extensive work and additional capital.

    c. Defendant Rafael Mawardi appears to have fabricated budget items in relation to the start-up costs of the project. Among these were requests for funds for the Casino's licensure. This money appears to have been paid to Defendant Rafael Mawardi, not to third parties or vendors.

    d. Defendant Rafael Mawardi indicated that Plaintiff would be a 1/3 owner of the Casino, that another party would hold a 1/3 interest, and that Defendant Rafael Mawardi would hold a 1/3 interest. However, Defendant Rafael Mawardi filed documentation with governmental authorities in the Dominican Republic awarding to himself a 2/3 ownership, despite having contributed zero capital to the project.

    e. Defendant Rafael Mawardi failed to title as promised contiguous beach properties that were to be acquired for Plaintiff and his family, including a house and beach front land in Plaintiff's name, and appears to have recorded

14

> with governmental authorities in the Dominican Republic records claiming
> that he owns 50% of these private properties.
>
> f. Defendant Rafael Mawardi assured Plaintiff that for his investment funds he
> was receiving 41 finished hotel units and 41 unfinished units. It appears that
> through the transaction that Defendant Rafael Mawardi orchestrated,
> Plaintiff only owns 41 *total* units.

113. As a result of these false statements and representations, Plaintiff was induced to pay a total of $4.4 million for his investment.

114. It appears that the entire property is worth less than $1 million, even following Plaintiff's substantial investment.

WHEREFORE, Plaintiff requests that this Honorable Court award damages in Plaintiff's favor, as well as reasonable attorney's fees and court costs, and any other further relief, that this Court deems just and equitable under the circumstances. Plaintiff further demands that Defendant Rafael Mawardi be required to relinquish all holdings and titles in the Casino Playa Chiquita project.

## COUNT XII: CONTRIBUTION AND INDEMNIFICATION

### AGAINST DEFENDANTS RAFAEL AND ISAAC MAWARDI

115. Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 25 above, as if fully incorporated herein.

116. The jointly-owned companies are alleged to be liable to various persons, real property lienors, and other third parties.

15

117.    The jointly-owned companies alleged liability is on account of the wrongful acts, practices, and related misconduct alleged and it arises, in whole or in part, from the knowing, reckless, disloyal and/or bad faith acts or omissions of the Defendants Rafael and Isaac Mawardi.

118.    The Plaintiff, who is the only shareholder willing to meet a capital call, is entitled to contribution and indemnification from Defendant Isaac and Rafael Mawardi in connection with all such claims that have been, are, or may in the future be asserted against the jointly-owned companies by virtue of the Defendants' misconduct.

WHEREFORE, Plaintiff requests that this Honorable Court award damages in Plaintiff's favor and against Defendants Rafael and Isaac Mawardi, reasonable attorney's fees and court costs, and any other further relief, that this Court deems just and equitable under the circumstances.

## COUNT VIII: BREACH OF CONTRACT

### AGAINST RAFAEL AND ISAAC MAWARDI

119.    Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 25 above, as if fully incorporated herein.

120.    Plaintiff and Defendant Isaac Mawardi, entered into the Joint Venture Agreement. *See* **Exhibit A**.

121.    The JV Agreement was drafted by Defendant Rafael and/or Isaac Mawardi.

122.    The JV Agreement was signed by Plaintiff and Isaac Mawardi.

123.    Notwithstanding, the JV Agreement imposed obligations in Section 8 specific to Rafael Mawardi, personally.

124. When the parties signed the JV Agreement, it was Plaintiff's understanding that the JV Agreement was binding upon the entire Mawardi family, who together operate various aspects of the Nurielle business and the subsidiaries specifically named in the JV Agreement.

125. Moreover, Defendant Rafael Mawardi, who was involved in the drafting of the agreement, made it known to Plaintiff that his son, Isaac, signs documents for him, and had full authority to represent the Mawardi family in this transaction.

126. The purpose of the JV Agreement was for the parties to "associate themselves together" and to pool all assets, brands, inventories, properties and employees into one entity, to be known as "House of Nurielle." *See* **Exhibit A**.

127. Plaintiff paid the Defendants a sum of $3,200,000.00 in consideration for the benefits promised to him under the JV Agreement.

128. Defendants, however, breached the agreement.

129. These breaches are material, and commenced the day the JV Agreement was signed.

130. Specifically, Defendants' breaches of the JV Agreement are as follows:

### a. **The Mawardis did not perform the initial provisions of the contract**

131. There are four applicable covenants that Isaac Mawardi undertook. None of these initial contract provisions, which were Mawardi's exclusive duty to complete in July 2011, were fully or successfully-executed. These covenants are:

> a. On page two of the JV Agreement, Isaac Mawardi agreed to transfer intellectual property to the joint venture.
>
> b. On page two of the JV Agreement, Isaac Mawardi agreed to transfer the commercial office building to the JV, upon payment of the mortgage.

17

      c. On page two of the JV Agreement, Isaac Mawardi agreed to bring into the

       joint venture all the Nurielle business entities.

      d. On page two of the JV Agreement, Isaac Mawardi agreed to restructure all

       Nurielle businesses, in recognition of the July 2011 joint venture.

132. None of these initial JV Agreement covenants were performed.

133. These are essential, not incidental, contractual provisions that go the very heart of the joint venture agreement.

134. Nurielle companies were not brought into the joint venture, as required.

135. Isaac Mawardi failed to integrate the Nurielle companies, as promised. Cinema Clothing USA, LLC, a Florida limited liability company, established in 2006, continues to be owned operated outside of the JV. It appears to be a run by Daniel Mawardi and Nuriel Mawardi, not the joint venture.

136. Seven months after the JV agreement required Cinema Clothing USA to be folded into the JV, Nuriel Mawardi filed a document with the Florida Secretary of State. The March 31, 2012 document states that she and Daniel Mawardi, not the joint venture, were the owners. The oath she took in that signed document states as follows:

> **"I hereby certify that the information indicated on this report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company."**

137. Not only does this company appear to be operating outside the JV, but Isaac Mawardi alleged in the JV Agreement that the name, "Cinema Clothing USA" was a trademark – one he undertook to transfer to the JV. That also did not occur.

138. Likewise, Nuri & Elle Studio, Inc., a Florida Corporation, also appears to continue to operate outside the joint venture.

18

139.    Formed in 2010, this company's current officers are Elizabeth Mawardi and Nuriel Mawardi. This was changed on March 2, 2011. The prior officers were Rafael Mawardi and Limor Mawardi, according to the company initial articles of incorporation.

140.    On March 31, 2012, Elizabeth and Nuriel Mawradi filed their annual report with the State of Florida, and continue to maintain in state filing that they are the owners.

141.    Stock certificates were never provided to the JV or to Plaintiff.

142.    No bill of sale for Nuri & Elle Studio, Inc.'s assets was ever provided to the JV or to Plaintiff.

143.    This company appears to continue to be operating outside the JV.

144.    House of Nurielle.Com, LLC is another example.

145.    This LLC appears to be a holding company for Nurielle internet properties.

146.    It was formed on November 8, 2011, thus four months after the JV agreement was signed. But it does not appear to have contributed its assets to the JV, either.

147.    In fact, all Nurielle website properties, including www.Nurielle.com, are owned outside the joint venture.

148.    The primary internet property, www.Nurielle.com, is owned by a company called Conquest Group, LLC (www.ConquestGroup.us).

149.    The internet registration record was last updated on February 10, 2012.

150.    Another initial provision of the agreement, Section 3, states that "Mawardi further agrees to contribute the real property located at 4142 N. 28th Terrace, Hollywood, Florida to the joint venture, provided that Edelsten pays off the existing mortgage on the Property."

151.    Plaintiff paid the mortgage.

152.    The property was never signed over.

**b. Defendants breached the financial controls provision of the agreement**

153.    Section 8 of the joint venture states that "No Venturer shall make any monetary disbursement from the Joint Venture in excess $5,000.00 without the unanimous consent of the Venturers."

154.    This is a key financial controls provision.

155.    The intent of such provisions is to ensure that all investors are advised and consent to the financial aspects of day-to-day operations.

156.    Isaac Mawardi breached this provision.

157.    He and Rafael Mawardi appear to have operated Nurielle with little accountability since July of 2011 when the JV commenced.

**c. The Mawardis breached the transparency provisions of the agreement**

158.    Similarly, the Mawardies appear to have breached Section 6 and Section 7 of the JV Agreement.

159.    They have failed to respond to repeated requests by Plaintiff for financial data.

160.    On Tuesday afternoon, September 4, 2012, Rafael Mawardi stated to eight witnesses at a meeting that he does not release financial information, except on premises at Nurielle's headquarters, for fear that it will fall into the hands of the Internal Revenue Services.

161.    This is a breach of the JV Agreement.

**d. Rafael Mawardi breached the management covenant of the agreement**

162.    Another material breach is Rafael Mawardi's promise not to become distracted in other businesses.

163.    The agreement states in Section 8 that he will "work exclusively for the Joint Venture."

20

164.    Mr. Mawardi has not honored this provision.

165.    He is participating in a variety of other businesses, some without Plaintiff's consent.

### e. The Mawardis have breached the non-competition covenant

166.    Section 9 of the JV Agreement prohibits the Mawardi family from competing against the joint venture.

167.    The section provides that "during the term and for a period of (12) months after any dissolution of the Joint Venture, Mawardi and Edelsten will not…" participate in any competitive enterprise "in the wholesale or retail fashion industry."

168.    The Mawardi family members, including Isaac and Rafael, have not honored this provision.

169.    By virtue of the fact that the Nurielle businesses themselves continue to operate outside the joint venture, Defendants Isaac and Rafael Mawardi have breached this provision.

170.    In addition to existing the Nurielle businesses, it is based upon information and belief that since the JV Agreement, Mawardis have commenced other product lines, innovations, ideas, designs, and projects that are not part of the joint venture and are competing with the joint venture.

WHEREFORE, Plaintiff requests that this Honorable Court award damages in Plaintiff's favor and against Defendants Rafael and Isaac Mawardi, reasonable attorney's fees and court costs, and any other further relief, that this Court deems just and equitable under the circumstances.

### COUNT IX:  RECIVERSHIP AND DISSOLUTION OF HOUSE OF NURIELLE

21

AS TO THE NURIELLE JOINT VENTURE AND AS TO ALL HOUSE OF NURIELLE
COMPANIES AND ASSETS INCLUDING NURIELLE, LLC, NURIELLE BAL HARBOUR
CORP., HOUSE OF NURIELLE MIAMI LLC, HOUSE OF NURIELLE.COM LLC, HOUSE
OF NURIELLE LLC, CINEMA CLOTHING USA, LLC, NURI & ELLE STUDIO, INC.

171.    Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1
through 25 above, as if fully incorporated herein.

172.    Plaintiff and Defendant Isaac Mawardi are each 50% owners of the House of
Nurielle.

173.    The directors of the House of Nurielle are deadlocked in the management of the
corporate affairs, the shareholders are unable to break the deadlock, and irreparable injury to the
corporation is threatened and being suffered.

174.    Moreover, the corporate assets of the House of Nurielle are being misapplied or
wasted, causing material injury to the corporation;

175.    The directors and/or those in control of the House of Nurielle have acted, are
acting, or are reasonably expected to act in a manner that is illegal or fraudulent.

176.    Pursuant to Florida Statute § 607.1430, dissolution is appropriation.

177.    Upon dissolution, liquidation of all House of Nurielle assets is appropriate under
Florida Statute § 607.1433(2).

178.    A receiver is appropriate pursuant to Florida Statute § 607.1432.

WHEREFORE, Plaintiff requests that this Honorable Court enter an order appointing a
receiver and dissolving the House of Nurielle joint venture and its companies.

## COUNT X: SECURITIES FRAUD VIOLATIONS UNDER 15 U.S.C. § 77l AND FLORIDA STATUTES CHAPTER 517

### AGAINST RAFAEL MAWARDI

179. Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 25 above, as if fully incorporated herein.

180. The solicitation and sale of such investments by Rafael Mawardi constituted the sale of securities under the Securities Act of 1933 and the Florida Securities and Investor Protection Act, Chapter 517, Florida Statutes.

181. Defendant Rafael Mawardi committed securities fraud with respect to his solicitation of Plaintiff's investment in House of Nurielle and Casino Playa Chiquita.

182. Defendant Rafael Mawardi further committed securities fraud in the manner in which he issued shares and/or ownership interests in the various investment companies.

183. Defendant Rafael Mawardi's oral communication to Plaintiff included untrue statements of a material fact.

184. Moreover, Defendant Rafael Mawardi's oral communication contained actionable material omissions.

185. In addition, Defendant Rafael Mawardi committed securities fraud when he promised that he would issue 2/3 of all shares in the Casino Playa Chiquita to Plaintiff and instead retained or failed to distribute these shares in the company to Plaintiff.

186. Defendant committed securities fraud when he hypothecated another 10.00% of the shares in Casino Playa Chiquita to a third party – a prior owner of the Casino – without notice to, consent from, or disclosure to Plaintiff.

187. Additionally, the securities were not registered as required by the Securities Act of 1933 and the Florida Securities and Investor Protection Act, Chapter 517, Florida Statutes.

WHEREFORE, Plaintiff requests that this Honorable Court award damages in Plaintiff's favor and against Defendants Rafael Mawardi in an amount equal to that necessary for Plaintiff

23

to recover the consideration paid for Plaintiff's investments in the House of Nurielle Joint Venture and the Casino Playa Chiquita, with interest thereon, less the amount of any income received thereon pursuant to 15 U.S.C. § 77l.

## COUNT XI: SECURITIES FRAUD VIOLATIONS UNDER 15 U.S.C. § 77l

### AGAINST ISAAC MAWARDI AND SCOOP BAR & GRILL, LLC

188.    Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 25 above, as if fully incorporated herein.

189.    The solicitation and sale of such investments by Rafael Mawardi constituted the sale of securities under the Securities Act of 1933 and the Florida Securities and Investor Protection Act, Chapter 517, Florida Statutes.

190.    Defendant Isaac Mawardi committed securities fraud with respect to his solicitation of Plaintiff's investment in Scoop Bar & Grill, LLC, which owns Tier Nightclub at 20 East Central Boulevard, Orlando, Florida.

191.    Defendant Isaac Mawardi solicited a $450,000.00 investment from Plaintiff.

192.    Defendant Isaac Mawardi states that the funds would purchase for Plaintiff 20.00% of all units in the nightclub's holding company.

193.    Plaintiff paid for the units in full.

194.    Despite payment in full, Defendant Isaac Mawardi did not deliver the securities.

195.    Nor did Defendant Scoop Bar & Grill, LLC deliver the units.

196.    Defendant Isaac Mawardi indicated to Plaintiff that the nightclub is highly profitable.

197.     Despite this fact, Defendant Scoop Bar & Grill, LLC has not paid any dividends or distributions to Plaintiff.

198.     On Tuesday afternoon, September 4, 2012, Plaintiff requested that Defendant Isaac Mawardi deliver the securities that Plaintiff purchased.

199.     Defendant Isaac Mawardi refused.

200.     Defendant Isaac Mawardi stated that since Plaintiff, in his opinion, owed money to another unrelated company, he did not recognize Plaintiff's ownership interest in Scoop Bar & Grill, LLC.

201.     Plaintiff stated that it was not right for Defendant Isaac Mawardi to play a game of "Tit-for-tat" and to hold the securities hostage.

202.     Defendant Isaac Mawardi responded by stating that it was indeed his intention to play "tit-for-tat," and that he would not issue the securities.

203.     Defendant Isaac Mawardi and Scoop Bar & Grill, LLC's oral communication to Plaintiff, that he would receive 20% of the securities for Scoop Bar & Grill, LLC included untrue statements of material fact.

204.     Moreover, Defendant Isaac Mawardi's and Scoop Bar & Grill, LLC's oral communication contained actionable material omissions, to wit, that they would not issue shares at all, if Plaintiff did not satisfy Defendant Isaac Mawardi with respect to completely unconnected ventures.

205.     In addition, Defendant Isaac Mawardi and Scoop Bar & Grill, LLC committed securities fraud when they promised Plaintiff that he would, upon purchasing the 20.00% share of the company's securities, receive a 20.00% share of all profits.

206. To date, he has received nothing for his $450,000.00, neither securities nor profit, nor has Plaintiff been permitted to participate in the management of the nightclub, nor has he even received notices of any company actions or decisions.

207. Additionally, the securities were not registered as required by the Securities Act of 1933 and the Florida Securities and Investor Protection Act, Chapter 517, Florida Statutes.

WHEREFORE, Plaintiff requests that this Honorable Court award damages in Plaintiff's favor and against Defendants Isaac Mawardi and Scoop Bar & Grill LLC in an amount equal to that necessary for Plaintiff to recover the consideration paid for Plaintiff's investments in the nightclub, with interest thereon, pursuant to 15 U.S.C. § 77l, and further provide a full accounting of Scoop Bar & Grill, LLC, and if permitted under law, afford Plaintiff the option to maintain or sell his investment if the nightclub is profitable such that the shares have appreciated.

## COUNT XII: ACTION FOR TEMPORARY & PERMANENT INJUNCTIVE RELIEF

208. Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 25 above, as if fully incorporated herein.

209. Plaintiff seeks a temporary and permanent injunction against Defendants Rafael and Isaac Mawardi.

210. Specifically, Plaintiff requests an injunction ordering Isaac Mawardi and Rafael Mawardi as follows:

> a. That Rafael Mawardi shall cease from making any further extortionate threats against Plaintiff;
>
> b. That Rafael and Isaac Mawardi shall cease from any further contact with the Plaintiff, except through Plaintiff's counsel;

c. That Rafael and Isaac Mawardi shall immediately dispense with all management of non-House of Nurielle Companies, and further shall not interfere with Plaintiff as Plaintiff conducts business relating to these companies;

d. That except for the Factory, Rafael and Isaac Mawardi shall not visit any of the properties, except while supervised and with the permission of Plaintiff, and except as directed to corporate counsel, shall have no further contact with any employees of the properties or the Casino.

e. That Rafael and Isaac Mawardi shall immediately deliver to Plaintiff all books, records, bank statements, records of all bank accounts, vendor agreements, ledgers, Quickbooks or other accounting files, signature stamps, any other business records relating to all of the non-House of Nurielle Companies. Specifically, if not already in Rafael and Isaac Mawardi possession, these shall include itemized, monthly, profit-and-loss statements for each investment, a current, itemized and complete balance sheet for each investment, all credit card statements, and ledgers and complete statements for each and every bank account, and all keys and codes, and including those for the vaults or storage compartments at Casino Playa Chiquita, as well as all casino chips.

211. The non-Nurielle companies are: Altels Management, LLC, Barrington Spring House, LLC, Resort Management, LLC, Millennium Management USA, LLC, Investments Australia, LLC, Playa Chiquita International S.A., Seesaw Development USA, S.R.I.,Noffyam, S.R.L., Zera Casinoa and Hotel Management, and Millennium Management DR.

212.    Should the injunctive relief sought herein not be granted, Plaintiff will suffer irreparable harm.

213.    Other than injunction, Plaintiff has no other adequate remedy at law.

214.    Plaintiff has a substantial likelihood of success on the merits of this action.

215.    A temporary injunction in this matter will serve the public interest.

216.    No bond, or a *de minimum* bond or cash deposit is all that should be required.

WHEREFORE, Plaintiff respectfully requests that this Court enter a temporary and permanent injunction.

## COUNT XIII: DECLARATORY JUDGMENT

217.    Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 25 above, as if fully incorporated herein.

218. Plaintiff seeks declarations of rights pursuant to 28 U.S.C. § 2201, the Federal Declaratory Judgment Act.

219. Specifically, Plaintiff seeks a declaratory judgment stating the following with respect to the dispute among the parties in this case:

> a.  **"Nurielle," "Nuri & Elle Studio," "Cinema Clothing USA," "Alfie's Shoes," "Sachi Kruz," "Drew Cooper," and "Nurielle Fashion" are not federally-registered trademarks.**

220. Despite Defendant Rafael and Isaac Mawardi's representations to the contrary, House of Nurielle has no federally-registered trademarks.

> b.  **Defendant Rafael Mawardi's threatened or actual aircraft lien on N770GE, and his actual or threatened UCC-1 filing on the aircraft holding company are fraudulent and void *ab initio*.**

221. On September 9, 2012, Defendant Rafael Mawardi contact the aircraft manager for Plaintniff's aircraft. The aircraft manager is Bob LeBlanc.

222. In the court of communication, Defendant Rafael Mawardi stated that he had filed – or was about to file – and aircraft lien on N770GE.

223. Defendant Rafael Mawardi also indicated that he had filed, or was about to file, a UUC-1 lien and security agreement in relation to N770GE.

224. Part 49 of the Federal Aviation Regulations governs the filing of liens with the Federal Aviation Administration.

225. Defendant Rafael Mawardi has not right or standing to file an aircraft lien.

226. Nor does Defendant Rafael Mawardi have the right to file a UCC-1 with respect to the aircraft.

### c. **Plaintiff is the managing member of all of the real estate companies and has the support of a majority in interest.**

227. Plaintiff was the original managing member and is entitled to continue to hold that position as to all of the non-Nurielle companies enumerated above in this complaint. Plaintiff further has the support of all minor shareholders and thus a majority voting block.

### d. **4142 N 28th Terrace, Hollywood, Florida is owned by the Nurielle Joint venture, not the Defendants, and should be awarded to Plaintiff upon liquidation of the House of Nurielle.**

228. Plaintiff therefore requests that the court quiet title as to this property.

### e. **5761 SW 40th Avenue, Dania Beach, Florida is owned by Plaintiff**

229. Plaintiff therefore requests that the court quiet title as to this property.

### f. **2615 Stirling Road, Dania Beach, Florida is owned by Plaintiff**

230. Plaintiff therefore requests that the court quiet title as to this property.

### g. **N770GE, an aircraft, is owned by Plaintiff**

29

231. Plaintiff therefore requests that the court quiet title as to this asset.

WHEREFORE, Plaintiff respectfully requests that this Court enter a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 USC § 2201.

## COUNT XIV: MONEY LOANED

232. Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 25 above, as if fully incorporated herein.

233. In October 2010, Plaintiff personally loaned to Defendant Rafael Mawardi $200,000.

234. The parties agreed to 10% interest.

235. Demand has been made for repayment of the loan, and the loan remains outstanding.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant Rafael Mawardi for $200,000.00 plus interest.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court:

I.     **ENTER A TEMPORARY INJUNCTION, PRELIMINARY INJUNCTION AND/OR PERMANENT INJUNCTION;**

II.    **APPOINTMENT OF A RECEIVER FOR THE HOUSE OF NURIELLE;**

III.   **AWARD DAMAGES, INCLUDING PUNITIVE DAMAGES AGAINST DEFENDANTS;**

IV.    **DETERMINE AND DECLARE THE RIGHTS OF THE PLAINTIFF;**

30

V.     **DISGORGEMENT. ISSUE AN ORDER DIRECTING THE DEFENDANTS TO DISGORGE ALL PROFITS OR PROCEEDS THAT THEY HAVE RECEIVED AS A RESULT OF THEIR VIOLATION OF THE SECURITIES LAWS OF THE UNITED STATES AND THE STATE OF FLORIDA.**

VI.    **ADDITIONAL RELIEF. ADDITIONALLY, PLAINTIFF DEMANDS JUDGMENT DAMAGES, PREJUDGMENT INTEREST, ATTORNEYS' FEES AND COSTS, AND ANY OTHER OR FURTHER RELIEF THIS COURT DEEMS JUST AND PROPER. AS WELL AS TRIAL BY JURY ON ALL CAUSES OF ACTIONS AND ISSUES PRESENTED IN THIS COMPLAINT.**

## REQUEST FOR JURY TRIAL

Plaintiff here requests jury trial of all matters so triable as a matter of right.

_____
TERRY L. HIRSCH, ESQ.
Florida Bar No.: 199869
NETALI PELES, ESQ.
Florida Bar No.: 84558
Lynch & Robbins PA
2639 Dr. MLK Jr. Street N.
St. Petersburg, FL 33704
Telephone: (727) 822-8696
Facsimile: (727) 471-0616
Attorneys for Plaintiff
thirsch@floridalawyer.com
